UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUIS VILLANUEVA, <br><br> Plaintiff, <br><br> v. <br><br> WEBER-STEPHEN PRODUCTS, LLC, <br><br> Defendant. | No. 23 CV 889 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Luis Villanueva, who is Hispanic and speaks Spanish, worked as a warehouse associate for defendant Weber-Stephen Products, LLC. He brings this suit against defendant for national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Weber moves for summary judgment. For the reasons discussed below, the motion is granted.

I. **Legal Standards**

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party … [and] [t]he substantive law of the dispute determines which facts are material." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (internal citations omitted). I view all the facts and draw reasonable inferences in favor of the non-moving party to determine whether summary judgment is appropriate. *See Uebelacker v. Rock Energy Coop.*, 54 F.4th 1008, 1010 (7th Cir. 2022).

## II.     Local Rule 56.1

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a statement of facts that demonstrates its entitlement to judgment as a matter of law. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a)(2). The nonmoving party must file a response to that statement and may provide a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(2)–(3). Both statements of facts and statements of additional facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* N.D. Ill. Local R. 56.1(d)(1)–(2).

Villanueva did not file a response to defendant's statement of facts, so I deem those facts admitted. *See* N.D. Ill. Local R. 56.1(e)(3); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Villanueva did not file a statement of additional facts, which, although not required, would have given him the opportunity to present his side of the story. *See* N.D. Ill. Local. R. 56.1(b)(3). Villanueva introduces additional facts in his brief and cites directly to his deposition testimony. *See* [32] at 4–6, 8–9.[1] I disregard those additional facts as improperly presented. While I accept Weber's facts as undisputed, I view those facts in the light most favorable to Villanueva. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are taken from defendant's Local Rule 56.1 statement, [28].

2

Rule 56.1, does not, of course, automatically result in judgment for the movant."). The burden remains with Weber to show that it is entitled to judgment as a matter of law.

### III. Facts

Weber-Stephen Products, LLC manufactures charcoal, gas, electric, and pellet grills, and grill accessories. [28] ¶ 2. Weber hired Luis Villanueva in August 2015 as a warehouse associate at its distribution facility in Huntley, Illinois. *Id.* ¶ 18. Villanueva is Hispanic and primarily speaks Spanish. *Id.* ¶¶ 19–20. When Weber hired him, Villanueva received copies of the company's employment policies in English and Spanish. *Id.* ¶ 12. He received annual safety and human resources training in Spanish. *Id.* ¶ 14. The majority of Weber's workforce at the Huntley facility speak Spanish, and Weber does not prohibit employees from speaking Spanish at work. *Id.* ¶¶ 11, 16.

Warehouse associates load orders, pick and scan products, check them for damage, place labels on orders, and ensure product and order specifications match and are loaded to the correct trailer for delivery to customers. [28] ¶ 29. They receive periodic training on how to properly load customer shipments. *Id.* ¶ 30. Job orders in the shipping department are assigned randomly. *Id.* ¶ 31. A warehouse associate first obtains order paperwork, confirms the product, inspects for any damage, loads a trailer with the product, and applies the packing slip to the order. *Id.* ¶¶ 31–33. Warehouse associates are expected to complete an order within two hours. *Id.* ¶ 34.

While working as a warehouse associate, Villanueva received ten disciplinary actions. [28] ¶¶ 35–45. Villanueva received a verbal warning for carelessness after failing to properly load a customer order in December 2017. *Id.* ¶ 35. He received a

written warning in June 2018 for carelessness after failing to check an order and loading the order to the wrong trailer. *Id.* ¶ 36. Two months later, he received a three-day suspension after loading damaged product. *Id.* ¶ 37. In August 2019, he received an employee performance coaching/counseling report from the shipping department's lead for loading an incomplete order for shipment. *Id.* ¶ 38. Two months later, he received another report for damaging product during the loading process. *Id.* ¶ 39. In December, Villanueva received a verbal warning for improper work after failing to crosscheck an order and loading it to the wrong trailer. *Id.* ¶ 41. Three other employees had to assist in fixing the error. *Id.* The verbal warning stated that, "[i]f this continues, discipline will be administered up to including termination." *Id.* The same month, Villanueva received a written warning for improper work after loading an incomplete order for shipment. *Id.* ¶ 42. In January 2020, Villanueva received another report after loading a shipment to the wrong trailer. *Id.* ¶ 43. Two months later, he received a report for damaging product while operating a forklift unsafely. *Id.* ¶ 44. The month after, he received a verbal warning for poor performance after failing to complete an order within the two-hour loading period. *Id.* ¶ 45. Villanueva did not object to these disciplinary actions. *Id.* ¶ 46.

He submitted a grievance to his union in April 2020 after an incident where the warehouse supervisor, Krista Kralik, yelled at him in English to start loading his trailer. [28] ¶ 48. There's no record of whether the union presented the grievance to Weber. *Id.* ¶ 50. There's also no record of Weber disciplining Villanueva for speaking Spanish in the workplace. *Id.* ¶ 16. It also never denied his requests to have a

4

supervisor interpret or translate from English to Spanish. *Id.* Villanueva quit his position in June 2021. *Id.* ¶ 53.

In June 2020, Villanueva filed a charge with the Illinois Department of Human Rights, cross-filed with the Equal Employment Opportunity Commission, alleging discrimination based on language and retaliation. [28] ¶ 54. He received a right-to-sue letter and filed suit against Weber in the Circuit Court of Kane County alleging violations under Title VII of the Civil Rights Act of 1964. [1]. The case was removed to this court. 28 U.S.C. § 1441(a).

IV. Analysis

    A. **Discrimination Based on National Origin**

Title VII of the Civil Rights Act prohibits employers from discriminating against an employee on the basis of national origin. 42 U.S.C. § 2000e–2. While language itself is not a protected category under Title VII, linguistic characteristics are often associated with a national origin group and may be the basis for national origin discrimination. *See* 29 C.F.R. § 1606.1; *cf. Kikumura v. Turner*, 28 F.3d 592, 599 (7th Cir. 1994). An employee may prove discrimination under Title VII through the *McDonnell Douglas* burden-shifting framework. Under this framework, a plaintiff establishes a prima facie case of discrimination when he presents evidence that he (i) is a member of a protected class, (ii) was meeting his employer's legitimate expectations, (iii) suffered an adverse employment action, and (iv) a similarly situated employee not of his protected class was treated more favorably. *See Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022). The burden-shifting framework is just one way for a plaintiff to organize evidence. Ultimately, the question is "whether

5

the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Weber doesn't dispute Villanueva's membership in a protected class, but it argues that the other three elements to infer discrimination under the *McDonnell Douglas* test are not satisfied. [27] at 7.

Villanueva says that he was disciplined more harshly than three other employees similarly situated to him: Nicolas Pizano, Gustavo Martinez, and Israel Martinez. [32] at 4–6. All three comparators held the same position as him. [28] ¶¶ 25–28. He says it's reasonable to infer the inequitable disciplining was because of his national origin—he was disciplined by supervisors for speaking Spanish with other employees. [32] at 6. But there's no record that Villanueva was ever disciplined for speaking in Spanish. [28] ¶ 16. Villanueva asserts this additional fact in his brief with a direct citation to his deposition testimony in violation of Local Rule 56.1. This fact is not properly before the court. But the bigger problem here is that it's undisputed that all three comparators were also Hispanic. [27] at 8; [28] ¶¶ 25–27. Comparators must be *outside* of Villanueva's protected class. *See Jordan v. City of Gary, Ind.*, 396 F.3d 825, 833 (7th Cir. 2005) (finding that plaintiff was precluded from arguing a discrimination claim because the alleged comparator was a member of the same protected class as plaintiff). Villanueva asserts that language can be treated as a proxy for national origin. [32] at 5. But there's no factual dispute that Nicolas Pizano, Gustavo Martinez, and Israel Martinez also spoke Spanish. [28]

6

¶¶ 25–27. Villanueva fails to establish this essential element of a discrimination claim.

Even if these three employees are proper comparators, Villanueva fails to establish a genuine issue of material fact that he was meeting Weber's legitimate expectations. In total, Weber disciplined Villanueva ten times for performance issues. [28] ¶¶ 35–45. These included verbal and written warnings as well as coaching where he was told that failure to improve could result in further discipline, including termination. *Id.* Villanueva was disciplined for failing to load orders onto the proper trailer, failing to check products for damage, operating a forklift unsafely, and failing to complete orders within the required two-hour window. *Id.* All the disciplinary actions predated his April 2020 grievance. In some disparate-discipline cases, the legitimate-expectations element of the prima facie case overlaps with the pretext inquiry where an employee is "singled out" for discipline because of their protected characteristic. *See Curry v. Menard, Inc.*, 270 F.3d 473, 477–78 (7th Cir. 2001). But as discussed above, Villanueva does not identify similarly situated employees outside his protected class who had similar performance deficiencies yet were not disciplined in the same manner. And there's no other evidence in the record to suggest that Weber's disciplinary actions were pretextual—that Weber did not honestly believe that Villanueva was not meeting its legitimate expectations for loading and checking orders properly in a timely manner. *See Barnes-Staples v. Carnahan*, 88 F.4th 712, 716 (7th Cir. 2023) ("If [the employer] honestly believed it made the correct

7

employment decision—even if its decision was inaccurate, unfair, foolish, trivial, or baseless—[plaintiff's] claims cannot succeed.") (cleaned up).

Villanueva also fails to establish an adverse employment action. He says that he was subjected to a hostile work environment, which includes the warnings and write-ups.[2] [32] at 6–7. A hostile work environment may be an adverse employment action that alters an employee's work conditions. *See Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). But disciplinary actions by an employer for an employee's failure to meet legitimate employment actions—without something more to suggest discriminatory animus—do not support a hostile work environment claim. *See Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

Because no reasonable juror could find that Villanueva established the elements of a prima facie case for national origin discrimination, and no other record evidence supports an inference of discrimination, summary judgment is granted on this claim.

### B. Retaliation

To prove a claim for retaliation, Villanueva must "show that he engaged in statutorily protected activity, he suffered a materially adverse employment action, and there was a causal connection between the two." *Xiong v. Bd. of Regents of Univ. of Wisconsin Sys.*, 62 F.4th 350, 354–55 (7th Cir. 2023). Villanueva says that after he filed his April 2020 grievance (complaining about his supervisor, Krista Kralik,

---

[2] Here too, the portion of Villanueva's brief describing the hostile work environment improperly asserts facts. *See* [32] at 6 (mentioning other employees taking full lunches, but Villanueva being pressed to return as quickly as possible). I disregard these facts.

8

yelling at him in English and ordering him to start loading his trailer), his supervisors followed him more closely, ignored his requests for assistance, and forced him to request permission to use the bathroom.[3] [32] at 8–9.

Filing a union grievance may be a protected activity if it implicates discrimination. *See McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022) ("[T]he bare fact that [plaintiff] filed a union grievance and EEOC complaints does not make those activities statutorily protected. [Plaintiff] must show that the substance of those complaints implicated [their] alleged protected class."). Weber asserts that it never received any grievance alleging unlawful discrimination and it never received a grievance about the April 2020 incident. [28] ¶¶ 47–51. These facts are deemed admitted. Without an employer's knowledge about a protected activity, there is no basis for a retaliation claim. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) ("[T]he employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory."). Even accepting as true that the April 2020 grievance was properly recorded,[4] a description of mistreatment by a supervisor that does not implicate Villanueva's protected class does not constitute a statutorily protected activity. *See Miller v. Chicago Transit Auth.*, 20 F.4th 1148,

---

[3] Villanueva's complaint mentioned an incident with another supervisor named Will who yelled at him in English. [1-1] ¶ 21. Because this fact is not in the summary-judgment record, I only consider the incident with his supervisor Krista Kralik.

[4] Villanueva testified that he filled out a grievance form and gave a copy of it to the union steward, but he did not know if it was ever turned in; he received no follow up regarding the grievance. [28] ¶ 50; [32-1] at 91:2–92:9. Weber's collective-bargaining agreement outlines the grievance procedure as requiring the employee to deliver the grievance form to the steward who may present it to the warehouse manager/HR manager. [28] ¶ 10. Nothing in the record suggests that Villanueva didn't follow proper procedure.

9

1155 (7th Cir. 2021) (finding that an internal complaint where plaintiff described being "targeted" and treated unfairly by a supervisor but did not mention a reason for the treatment failed to create an inference of discrimination). Villanueva testified that his grievance described the incident as follows: his supervisor yelled at him in English, she was angry, he was not able to understand what she was saying except for the order to start loading, and it was said in a "very bad manner." [32-1] at 87:20–88:20. Besides mentioning that his supervisor yelled at him in English in an angry tone, his grievance did not connect this treatment to his language and national origin. Because his grievance did not implicate national origin discrimination, it was not statutorily protected activity. Moreover, Villanueva fails to introduce evidence in the record that he was subjected to adverse employment actions after submitting his grievance. His brief points to incidents after his grievance including supervisors scrutinizing him more closely, ignoring his requests for assistance, and forcing him to request restroom breaks. But these facts are not properly asserted. Without any evidence that Villanueva engaged in statutorily protected activity or was subjected to adverse employment actions, no reasonable jury could find that Weber retaliated against Villanueva. Summary judgment is granted on the retaliation claim.

## IV. Conclusion

Defendant's motion for summary judgment, [26], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

                                              Manish S. Shah
                                              United States District Judge

Date: September 6, 2024